ASA COLLIER, PLAINTIFF AND APPELLANT, v. ARTHUR DE BRIGARD, DEFENDANT AND APPELLEE.

Argued February 15, 1910—Decided September 15, 1910.

Where an assignment has been made by a firm for the benefit of its creditors, and the assignee reassigned the property to the assignor in order that the latter might reassign to a third person, who promised, in consideration of the said assignment, to pay the firm's debts—*Held*, that the promise to pay the firm debts was enforceable by a firm creditor. The fact that this creditor had misstated the amount of his claim to the assignor in making up the list of creditors annexed to the original assignment, did not bar such creditor from recovering a less sum due him by the firm in an action upon the promise of the defendant to pay the debts of the assigning firm.

On appeal from the District Court of the city of Plainfield.

Before Justices REED, TRENCHARD and MINTURN.

For the appellant, *J. Henry Crane.*

For the appellee, *Harry C. Runyon.*

The opinion of the court was delivered by

REED, J. The facts appearing are these: On September 29th, 1909, De Brigard & Collier, a partnership doing business in Plainfield, made an assignment for the benefit of the firm's creditors to one William G. De Meza. On October 1st, 1909, De Meza reassigned the property contained in the previous assignment to him to De Brigard & Collier, for the purpose that the latter should assign the said property to the defendant, Arthur De Brigard. The assignment was made to Arthur De Brigard, who was the father of Louis De Brigard, of the firm of De Brigard & Collier.

The evidence is satisfactory that after the assignment by De Brigard & Collier made for the benefit of their creditors to Mr. De Meza, that Mr. Arthur De Brigard, the defendant, promised Mr. De Meza that if he would turn the partnership business over to him, he, the defendant, would pay all the debts of the firm, and all the expenses of the assignment.

The evidence shows that the assignment was made back to the firm, and by the firm the property was conveyed to Arthur De Brigard in pursuance of this agreement. The defendant took possession of this firm property, and paid most, if not all, of the firm creditors.

One of the firm creditors was Asa Collier. His claim for $73 the defendant refused to pay, and for it·this suit was brought.

Upon the close of the plaintiff's case, the court granted a nonsuit. One ground stated for this judicial action was that De Meza, the assignee, had no authority to reconvey the firm property back to the firm, and therefore no title passed from the firm to Arthur De Brigard, and no consideration arose to support the defendant's promise to pay the firm creditors, including the plaintiff.

This lack of power of the assignee is put upon the language of section 26 of the Assignment act of 1889 (at *p.* 158). This section confers power upon an assignee under the act, where the creditors have entered into a composition with the assignor to reassign. The language of the act empowers the Orphans Court, upon petition to it, setting out such a composition agreement, to direct a reassignment, and relieves the assignee from the trust imposed upon him by that instrument. The argument urged being that inasmuch as there was no composition in this case, the assignee had no right to reassign his interest in the property to his assignor.

The question, however, presented is whether De Meza, by his assignment to the firm, and through the firm to the defendant, conveyed an interest in the property which furnished a consideration which supported the promise of the defendant to pay the firm creditors, including the plaintiff.

It is clear that De Meza, the assignee, after the assignment had a legal title to the property of the firm. Upon that legal title was imposed a trust for the benefit of the creditors of the firm. The assignee could not rid the property of this trust by the reconveyance of the property to the assignor; for each of the creditors of the firm could compel the assignee in equity to execute the trust. Nevertheless, when the assignee did reassign the property to the firm for the purpose of having the firm itself convey it to the defendant upon his promise to pay all the firm creditors, De Meza conveyed an interest which passed to De Brigard. So long as the latter paid all the creditors, there was no one to invoke the trust with which De Meza was invested. The defendant was clothed with power to enforce the trust to the extent of the claims he had paid off; and in case he paid all the claims, no other person existed with any right to enforce the trust, or attack the legal title which the defendant derived from the reassignment to the firm.

For this reason, therefore, a valid title passed to Arthur De Brigard, and this consideration which so passed to him supported his promise to pay the debts of the firm, and raised a privity between him and each creditor. *Joslin* v. *New Jersey Car Spring Co.; 7 Vroom* 141.

The existence of this consideration also removes the transaction from the operation of the statute of frauds, so far as that statute forbids an action to charge the defendant upon any special promise to answer for a debt, default or miscarriage of another person.

There was a special, substantial consideration moving to the defendant as the inducing cause of his promise. *Cowenhoven* v. *Howell,* 7 *Vroom* 323; *Blackford* v. *Plainfield Gaslight Co.,* 14 *Id.* 438.

Another point relied upon to support the nonsuit was that Collier, the plaintiff, was guilty of fraud in permitting his claim to be overstated by the assignors in their list of creditors and the amount of their respective claims annexed to the assignment.

In that list the plaintiff's claim was stated to be $190 instead of $73, the amount for which judgment was claimed and entered. The list of claims was made up without each claim being carefully calculated. It does not appear that Collier fraudulently suggested that the amount due him would not equal $190. Collier did not put in, nor did he have the opportunity to put in, his claim to the assignee under oath, so no fraud appears in making a false claim to that officer.

The action of the court in nonsuiting upon the ground that Collier committed a fraud in permitting his claim to be overstated in the original list of creditors and claims, must rest upon the theory that this overstatement fraudulently induced the defendant to make his contract to pay the creditors of the firm. But it is obvious that the fact that the claim was stated in the list to be $190 instead of $73 was not calculated to induce the defendant to enter into his bargain, but, on the contrary, would tend to deter him from doing so. The contract was, in fact, less onerous than it appeared to be, if the list of claims was relied upon by the plaintiff as exhibiting what he would be liable to pay; for instead of being liable to pay Collier $190, he was, in fact, only liable to pay him $73.

We think, therefore, there was no ground for a nonsuit, and the judgment should be reversed.